1UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 03-CIV-80053
(ZLOCH/SNOW)

MARJORIE ENGSTROM

     Plaintiff,

v.

SAKS FIFTH AVENUE, INC.,
a Massachusetts Corporation,
SAKS Direct, Inc. a New York Corporation,
and SAKS & Company,Inc., a New York
Corporation; all d/b/a Saks Fifth Avenue,
in Palm Beach County and Dade
County, Florida

     Defendants.
_____/

**NIGHT BOX
FILED**

SEP 22 2003

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INCORPORATED MEMORANDUM OF LAW

     Plaintiff, MARJORIE ENGSTROM, (hereinafter "Plaintiff) by and through her undersigned counsel and pursuant to Fed. R. Civ. P. Rule 37 and Rule 26.1 of the Local Rules of the United States District Court for the Southern District of Florida (hereinafter"Local Rules") motions this Court to compel Defendants to produce the items requested in her Second Request for Production of Documents, and in support thereof states as follows:

### I. INTRODUCTION

     This is an employment discrimination case, filed by Marjorie ENGSTROM Against Saks Firth Avenue alleging violations of the ADEA, FMLA and Title VII.

     A. Plaintiff served "Plaintiff's Second Request to Produce To Defendants" (hereinafter "Request for Production") on June 27, 2003.

     B. Defendants' served their "Defendants' Response to Plaintiff's Second

1



Request For Production of Documents" on Plaintiff on August 22, 2003.

C. Plaintiff's counsel have had discussions with Defendants' counsel regarding items on this Motion, but have not been able to come to an agreement regarding the requests discussed herein.

## II. GENERAL CONCEPTS AND ARGUMENTS PERTINENT TO ALL REQUESTS

## A. THIS COURT SHOULD ALLOW BROAD DISCOVERY IN AN EMPLOYMENT DISCRIMINATION CASE

Plaintiff has the burden of both proving a prima facie case for the above claims and establishing pretext once the employer has produced what it believes to be a legitimate non discriminatory reason for taking adverse action against the Plaintiff.   Without the ability to conduct adequate and timely discovery in this matter, Plaintiff will be seriously impeded in obtaining the needed information to meet her burden.

Under Federal Rule of Civil Procedure 26, courts may order discovery on any matter which is relevant or which is reasonably calculated to lead to the discovery of admissible evidence.  Courts have generally given broad interpretation to this rule.  In addition, courts have applied more liberal discovery rules in cases involving allegations of employment discrimination and civil right violations. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983)

The rationale of the Court in Ladson  v. Ulltra East Parking Corp.et.al, 64 F.R.D. 376 (S.D. New York 1996) illustrates such thinking.  There the court stated at page 378: "the court is at a loss to see why current employees' files might not provide information about hiring and promotion that could be relevant or could lead to the discovery of relevant evidence. All that must be shown is that the discovery requested possibly might be relevant, *quoting Henderson v. National R.R. Passenger Corp.,* 113 F.R.D. 502, 506 (N.D.Ill.1986), or is reasonably calculated to lead to the discovery of admissible evidence quoting Fed.R.Civ.Proc. 26(b)(1); *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1342-43 (5th

2

Cir.1978).  Moreover, the Court must bear in mind the Supreme Court's direction that civil discovery rules are to be construed liberally in Title VII cases in order to provide the plaintiff with "broad access to employers' records." citing *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 657, 109 S.Ct. 2115, 2125, 104 L.Ed.2d 733 (1989).

Supervisory employees are not exempt by virtue of their position from these legitimate discovery requests. In Griffith v. Wal-Mart Stores, 163 F.R.D. 4 (E.D. Ky. 1995) personnel files of employers were subject to discovery where files sought were for managerial employees even though only specific acts of discrimination and not pattern or practice of discriminations were alleged.

## B. NATIONWIDE DISCOVERY

While Plaintiff acknowledges and accepts Defendants' references to the general limitations of nationwide discovery, Plaintiff asserts that several facts in this case support exceptions to the rule.   Plaintiff believes these facts demonstrate a  particularized need and likely relevance of broader information for the following reasons: 1) Defendants admitted in their interrogatories that decisions regarding Plaintiff's termination were at least partially made outside the geographic area of the Boca Raton store and 2) Plaintiff at her termination interview said she would take a job anywhere in the U.S, except Hilton Head.

## C. RELEVANCE

Under the federal rules, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389-90, 57 L.Ed.2d 253 (1978).  Where there is a doubt over relevancy, the court should still permit discovery. *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556 (7th Cir.1984).   Thus to the extent Plaintiff's requests are reasonable calculated to lead to the discovery of admissible evidence they should be granted, even if Plaintiff is not able to articulate a narrow and specific connection to a particular request. As testimony from most of the individuals whose files are being request will taken, the credibility of these individuals is in and of itself is relevant.

3

## D. DEFENDANTS' ASSERTIONS OF UNDULY BURDENSOME

Defendants object that several of Plaintiff's requests are unduly burdensome. Defendants however have made no substantial showing of how these requests are so Unduly burdensome. In Coker v. Duke & Co., Inc., 177 F.R.D. 682 , (M.D.Ala.,1998) the court there states that:

> Under well-settled law, the party resisting production bears the responsibility of establishing unduly burdensome. _G-69 v. Degnan,_ 130 F.R.D. 326, 331 (D.N.J.1990). Generally, a party seeking to avoid discovery on a burdensomeness argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden." An objection must show specifically how a [discovery request] is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." _Chubb Integrated Systems Limited, v. National Bank of Washington,_ 103 F.R.D. 52, 59-60 (D.D.C.1984); _see also EEOC v. Quad/Graphics,Inc.,_ 63 F.3d 642 (7th Cir.1995). The resisting party must make a particular and specific demonstration of fact and cannot rely on simple conclusory assertions about the difficulty of complying with a discovery request. _See Twin City Fire Ins. Co. v. Ford Motor Co.,_ 124 F.R.D. 652 (D.Nev.1989). A mere showing of burden and expense is not enough.

Thus, in those requests where Defendant's only supportable objections are that of the requests being "unduly burdensome", Plaintiff requests the Court to produce detailed information about these burdens.

## E. PRIVACY CONCERNS

Although relevance under Federal Rule of Civil Procedures 26 is always an issue regarding discovery requests, Florida law does not generally support the withholding of discovery based on Defendant's assertions of the privacy its employees. In Alterra Heathcare Corporation v. Estate of Shelly, 827 So.2d 936, the Florida Supreme Court held that an employer not subject to the Public Records Act does not have standing under Florida law to challenge disclosures of non party personnel record pursuant court ordered discovery. Id. at 939. Thus any attempts to withhold personnel files by Defendants based on privacy concerns should be denied.

.

4

## III. ARGUMENTS REGARDING SPECIFIC REQUESTS

Following are the specific document requests that Defendant has either objected to completely or has objected to and produced only some of the documents requested and Plaintiff's arguments regarding why the documents should be produced.

### Request No. 1

All organizational charts and drafts of organizational charts of Defendants' management structure in its Southeast Region for the time period of 1 year before Plaintiff's employment with Defendants through one year after Plaintiff's termination.

### Response

In response to Request for Production No. 1, Defendant objects to this Request on grounds that it is over broad in terms of geographic scope and time. Further, the request for "all drafts of organizational charts" seeks irrelevant documents not likely to lead to the discovery of admissible evidence. Without waiving the objection, Defendant states that it has no documents response to this request.

### Argument

Requests for the organizational charts are needed at a regional and corporate level to show the regional and/or corporate hierarchy of decision makers regarding the alleged Reduction in Force, and to show the hierarchy of decision makers at the time Plaintiff was fired. In addition, drafts and proposals of organizational charts and changes thereto, and the dates related to the changes could provide information about when the decision to terminate Plaintiff occurred relative to other events. Documents are needed to compare the personnel structure of different stores before and after the Reduction in Force, especially in regard to open positions that Plaintiff may have been able to fill.   As the Plaintiff was willing to take a position at any level anywhere in the corporation, except Hilton Head, these charts would also show open positions. As for organizational charts at both Regional and National levels, it is difficult to believe that organizational charts and/or

5

reporting structure charts of some kind or other, do not exist in a corporation as large as

Saks.  Plaintiff recalls Margaret Phalen having written documents on this subject available

to her at any time.

## Request No. 2

All organizational charts and drafts of organizational charts of the Defendants' management structure in its Bal Harbour store for the time period of 1 year before Plaintiff's employment with Defendants through one year after Plaintiff's termination.

## Response

In response to Request for Production No. 2, Defendant objects to this Request on grounds that it is over broad in terms of time and as to geographic scope. In October of 2001, when Plaintiff was laid off, she had been working at the Boca Raton store for two years, and therefore organizational charts of a prior store would be irrelevant to the claims in this case. Without waiving the objection, Defendant states that it has no documents responsive to this request

## Argument

Organizational charts at Bal Harbour are necessary to determine the reporting structure during this time so Plaintiff can gain an understanding of why she was not offered a cosmetics position for which she later learned she was qualified.  It is important to be able to inquire of the applicable persons the extent that Plaintiff was considered for that position. Charts would also show other open and vacant positions at Bal Harbour.

## Request No 3

All organizational charts and drafts of organizational charts of the Defendants' managerial structure in its Boca Raton store for the time period of 1 year before Plaintiff's employment with Defendants through one year after Plaintiff's termination.

## Response

In response to Request for Production No. 3, Defendant objects to this Request on grounds that it is over-broad in terms of time. This request should be limited to the period of time in which the purportedly discriminatory act(s) took place (i.e., October of 2001). Without waiving the objection, Defendant states that it has no documents responsive to this request.

## Argument

6

Requests for the organizational charts are needed to show the hierarchy of decision makers regarding the alleged Reduction in Force and to show the hierarchy of decision makers at the time Plaintiff was terminated. In addition, drafts and proposals of organizational charts and changes thereto, along with the dates related to the changes could provide information about when the decision to terminate Plaintiff occurred relative to other events. This is especially significant in regard to the timing of the creation of the third Assistant General Manager of Merchandising which occurred just 2 months before Saks reduced the number of Assistant General Managers of Merchandising from 3 to 2. Finally Plaintiff distinctively remembers organizational charts being distributed when corporate management visited the store. Charts would also show open and vacant positions. Plaintiff recalls Margaret Phalen having written documents on this subject available to her at any time.

### Request No. 4

All documents regarding Defendants' "A" team within Defendants' Southeast Region for the time period 1 year before Plaintiff's employment with Defendants through 1 year after Plaintiff's termination.

### Response

In response to Request for Production No. 4, Defendant objects to this Request on grounds that it is over-broad in terms of time and geographic scope, as well unduly burdensome. There are approximately 18 stores in the Southeast Region, and approximately 70 individuals currently employed as "A" team members. All documents regarding these employees would include not only thousands of pages of personnel files, involving individuals who have no involvement in the facts alleged in the Complaint, but could potentially encompass thousands of additional documents that simply refer to the "A" Team members in any number of contexts. Without waiving these objections, see response to Request No. 5.

### Argument

This information is needed to determine if any "A" Team employees transferred to other

positions during the relevant time period. One of Defendants' arguments as to why

Engstrom could not be transferred to a lesser position is that it is very difficult for "A Team"

members to move to a lower level position. Plaintiff's personnel file contained a small

number of changes, and the production of 70 similar files would be sufficient for the

purpose of this request, and would not be unduly burdensome. Also, please see the

General Argument in II D above regarding burdensome requests.

## Request No. 5

All documents regarding Defendants'  "A" team for the time period of 1 year before
Plaintiff's employment through 1 year after Plaintiff's termination at Defendants' Boca
Raton store.

## Response

In response to Request for Production No. 5, Defendant objects to this Request on
grounds that it is over-broad in terms of time. Further, the request is unduly burdensome
as it potentially encompasses thousands of additional documents that simply refer to the
"A" Team members in any number of contexts. Further, the request seeks irrelevant
information regarding individuals that are not parties to this suit, and who are not alleged
comparators. For example, the request would include the personnel file of the Human
Resources Director at the Boca Raton store, who is neither a decision-maker, nor a
comparator. **Without waiving said objection, Defendant states that it will produce the
personnel files of the alleged comparators (the other AGMMs) with respect to the
challenged layoff, (i.e., the files of Terry Seminara and Heather Shaw,) subject to a
Confidentiality Agreement.** Defendant further responds that with respect to the store
manager, Barbara Wolfson, there are no disciplinary actions in her personnel file
regarding employee complaints made against her.

## Argument

Plaintiff believes that if this Court grants request No. 24, there will not be a need for

considering the above request. In the event this Court does not compel production of

documents in Request No. 24,  Plaintiff brings to this Court's attention that employee

complaints are not the only type of relevant complaints in a personnel file. Plaintiff

requests production of documents, complaints or disciplinary warnings of any kind, which

Wolfson received.

## Request No. 7

All documents regarding any "A" Team members or Group Managers within Defendant's
Southeast Region who were given "Requires Improvement"or any other warnings for the
time period of one year before Plaintiff's employment with Defendant to one year after
Plaintiff's termination.

### Response

In response to Request for Production No. 7, Defendant objects to this Request on
grounds that it is over-broad as to the term "any other warnings." Further, the request is
unduly burdensome because it would require a review of the personnel files of the
approximately 60 individuals who held an "A" Team or Group Manager position in the
Southeast Region during the relevant time period. Without waiving this objection,
Defendant responds that there was only one "A" Team member who was laid off during the
same time period as Plaintiff, and that person did not have a "requires improvement" notice
in her file and she was not offered another position at Saks.

### Argument

These files are necessary because Margaret Phalen of Saks Corporate offices told Plaintiff

that she was terminated because of her "Requires Improvement" warning.  Thus the files

may indicate that other "A" Team members might have had one or more such warning and

were not terminated.  This is relevant to Plaintiff's burden of proving pretext, in light of the

statement Margaret Phalen made to Plaintiff.  In addition, these documents may contain

warnings regarding how stores handled particular issues during the Reduction in Force

which is information reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff does not understand how producing this information is unduly burdensome. Please

see II D above regarding unduly burdensome requests.

9

## Request No. 8

All documents regarding criteria used for identification of a Defendants' store as a "Flagship" store.

### Response

In response to Request for Production No. 8, Defendant responds that it has no documents responsive to this Request.

### Argument

When Plaintiff was working at Saks in Boca Raton, she specifically remembers written proposals being prepared by senior management so Corporate could make the determination whether the Boca Raton store would be named a Flagship Store.
These documents are relevant as they may indicate criteria regarding "Flagship Store" status. Flagship store status is important because it often drives the number of "A" Team positions open at a particular store.

## Request No. 9

All documents regarding any admonitions or warnings given to Norina Coursey in the past 8 years.

### Response

In response to Request for Production No. 9, Defendant objects to this Request on grounds that it is over broad as to the terms "admonitions" and "warnings," unduly burdensome and seeks irrelevant documents not likely to lead to the discovery of admissible evidence as it relates to Plaintiff's claims of age discrimination, retaliation and FMLA since Norina Coursey worked for a different store than Plaintiff and she was not part of the reduction in force that occurred in the Fall of 2001.

### Argument

Information about Ms. Coursey is needed as Plaintiff recalls Ms. Coursey making several

inappropriate and discriminatory statements at a seminar on "profiling" which was attended

by members of corporate management including Suzanne Johnson, Margaret Phalen and

Jay Redman. Coursey was admonished several times during this seminar about her

10

statements. Her file is needed to see whether it contains any notes or other documentation regarding this or other incidents. Such documentation would provide information regarding how complaints of discriminatory were handled by Saks relative to Plaintiff's.

### Request No. 10

All documents regarding any admonitions or warnings given to Barbara Keating in the past 8 years.

### Response

In response to Request for Production No. 10, Defendant objects to this Request on grounds that it is over-broad as to the terms "admonitions" and "warnings," unduly burdensome and seeks irrelevant documents not likely to lead to the discovery of admissible evidence as Barbara Keating worked in a different store than Plaintiff and she was not part of the reduction in force that occurred in the Fall of 2001.

### Argument

Plaintiff fails to understand why obtaining written notes or warnings from Keating's file is unduly burdensome (please see II D above). As for relevance, Plaintiff's recalls Keating's performance as store manager of the Orlando store being discussed at a meeting during the Step - Up program which she, Jay Redman and Donna Holnack attended. Plaintiff recalls a written action plan with follow on dates being developed at this meeting. Thus any information contained in Keating's file regarding this action plan would bring into question Defendants' assertion that all notes from Step Up were destroyed.

### Request No. 13

All documents regarding to assessments, evaluations, considerations, decisions or any other information regarding Plaintiff's termination from Defendants' employment.

### Response

In response to Request for Production No. 13, Defendant objects to this request to the extent it encompasses documents protected by the work-product act(s) and/or attorney/client privilege. Accordingly, a privilege log will be produced together with this response. **Without waiving this objection, Defendant has previously produced a copy**

11

**of the position statements submitted to the Palm Beach Equal Opportunity Commission with attached documents response to this request**

### Argument

Plaintiff is of the belief that there are some documents in Defendants possession that may not fall under the privileges above. From a common sense perspective and from Defendant's response to Plaintiff's Interrogatory No. 1 (see Exhibit B") in which directives regarding cost cutting were communicated to the Boca Raton management from a corporate level, Plaintiff's potential termination had to have been contemplated before the actual termination. Defendants need to show that documents regarding the Reduction in Force and Plaintiff's termination  were primarily drafted in anticipation of litigation rather than in response to the need to cut costs. See APL Corp v. Aetna Casualty and Sur. Co. 92 F.R.D. 10, 21 (D. Md. 1980). Moreover, subsequent examination by counsel of documents which were produced earlier for business reasons do not provide justification for privilege of them at a later time. See Brown v. Hart, Schaffner and Marx, 96 F.R. D 64,68 (N.D. Ill. 1982) 1982).

### Request No. 14

All Defendants' documents relating to downsizing decision making and activity during 2001.

### Response

In response to Request for Production No. 14, Defendant objects to the extent this request encompasses documents protected by the work-product or attorney-client privilege doctrine. Without waiving this objection, Defendant is conducting a diligent search to determine if any non-privileged documents exist that are responsive to this request and will promptly produce same, if they exist.

### Argument

Please see argument for Request No. 13.

12

## Request No. 17

All documents relating to the decisions to place Plaintiff on a "required improvement" status.

## Response

In response to Request for Production No. 17, **Defendant has previously produced a copy of Plaintiff's personnel file.** There are no other documents responsive to this request.

## Argument

As Defendants placed Plaintiff on a "Requires Improvement" status, it is important that Plaintiff has all records relating to her being put on this status.  First, without an articulation of some criteria regarding her "Requires Improvement", it is arguable that the mere fact of putting her on a "Requires Improvement", without information supporting this action, could support a finding that Defendant's use of the "Requires Improvement" was pretextual.  Even if there are no formal records of incidents substantiating this action, it is hard to believe that Defendant would not have any written notes to support this type of action.

The lack of documents certainly seems to reflect a deviation from the SAKS handbook which states on page 40, a copy of which is attached as Exhibit B:

" Performance Reviews should state specifically the job duties in which the Associates performance is unsatisfactory, the steps necessary to bring the performance to a satisfactory level, and the time allotted the Associate to meet the objectives set in the review, as well as the action which will result the end of that time if the Associate's performance has not reached a satisfactory level" .  Engstrom's file did not contain most

of this information. Thus the absence of this information on her written warnings adds

weight to the possibility of the being pretextual. Therefore, Plaintiff respectfully asks this

Court for Defendants to produce any possible documents that are relevant to this request.

## Request No. 18

All documents relating to consideration of withdrawing the "Requires Improvement"
from Plaintiff's file after 60 days of Plaintiff being put on such status.

## Response 18

In response to Request for Production No. 18, Defendant responds that there are no
documents responsive to this request, other than what is contained in Plaintiff's personnel
file.

## Argument

Plaintiff states that she inquired of Wolfson several times during the 60 day "Requires

Improvement" period, and several times after the same period about her performance and

the status of removing the "Requires Improvement" from her file.  She did this in part,

based on the following statement on page 40 of the handbook, a copy of which is attached

as Exhibit B"  "At the end of the waiting period, a review of progress will be made by

management".  Plaintiff thus requests that any notes maintained from Wolfson or anyone

else be produced regarding this or similar matters.

## Request No. 22

All documents regarding Defendants' exit interview with Plaintiff, including but not limited
to the following:

a.) all documents used in the planning or the implementation of the exit interview
b.) all documents regarding any communications made to Corporate during Plaintiff's exit
interview

c.) all documents prepared by Jill Rosenthal before, during and after the exit interview
d.) all documents related to Plaintiff's exit interview prepared by any Defendants' employees after Plaintiff's termination.

## Response

In response to Request for Production No. 22, Defendant refers to its response for Request No. 21.

## Argument

Plaintiff specifically recalls Wolfson taking notes during Plaintiff's exit interview.  Plaintiff

recollects that several questions she posed to Wolfson and Elizabeth Stone during this

time were then posed to Margaret Phalen for Phalen's response.  Thus, Plaintiff

respectfully asks  Defendants to confirm that these notes from Wolfson or Phalen do not

exist.

## Request No. 24

All personnel files of every person listed in Request Number 23. (Persons named in Request Number 23 were  Barbara Wolfson, Elizabeth Stone, Terry Seminara, Martha Montgomery, Heather Shaw, Jill Rosenthal, Allison Bergamini, Barbara Berman, Karen Kelly, Catherine Beaver, Britt Jackson, Mindy Curtis, Jim Hallowell, Ed Slusser, Betsy Trobough, Jay Redman, Donna Tallon, Tina Johnson, Suzanne Johnson, Carolyn Biggs, Margaret Phalen, and Jane Rakestraw.

## Response

In response to Request for Production No. 24, Defendant objects to this request on the grounds that the personnel files of current or past employees constitute private information regarding individuals who are not parties to this suit. Further, the request seeks irrelevant documents not likely to lead to the discovery of admissible evidence in this action as these employees were either subordinates or had a tangential relationship with Plaintiff. For example, Plaintiff is seeking the personnel files of the individuals in the Bal Harbour store and the administrative assistant in the Boca Raton store, none of whom were involved ion either the lay-off decision or the alleged FMLA violation. Without waiving said objections, **Defendant will produce the personnel files of Terry Seminara and Heather Shaw, the alleged comparators in the case, pursuant to a confidentiality agreement and refers to its response to Request Nos. 5 and 6.**

15

## ARGUMENT

Plaintiff is now requesting the court to compel Defendants productions of the personnel files of Barbara Wolfson, Alison Bergamini, Martha Montgomery, Donna Tallon, Margaret Phalen and Catherine Beaver   Plaintiff is not waiving future requests for the files of the other individuals named in the above request. Plaintiff reasons for requesting each of the individual requests are stated below.   In addition to these individual reasons set forth, Plaintiff maintains that the issue of credibility is applicable to all the individuals; Plaintiff intends to depose or solicit testimony at trial from these individuals. See <u>Ragge v. MCA Universal Studios</u>, 165 F.R.D. 601 (C.D. CAL 1995) in which in response to defendants refusal to produce requested personnel files the court stated, that Fed. R. Civ. P. 26 permits the discovery of information which "may simply relate to the credibility of a witness or other evidence in the case."

In addition to credibility issues, Plaintiff's rationale with respect to each individual named above is as follows:

**1. Barbara Wolfson**

Barbara Wolfson was Plaintiff's direct supervisor and general manager of the Boca Raton Store. Her personnel file is needed as it may easily contain relevant information regarding the Reduction in Force which Defendants allege was the precipitating reason for Plaintiff's termination.  Information contained in her file from her superiors regarding financial goals set for profit and loss before, during and after the alleged "Reduction in Force" bears on Defendant's contention that the termination of the

Plaintiff was necessitated by economic conditions and for no other reason.

The production of Wolfson's file to Plaintiff is also warranted because it may contain specific directives from corporate management regarding the specific identification of Engstrom for termination. Defendants in their response to Plaintiff's interrogatories state that instructions on cost costing were received by Suzanne Johnson, the former Regional Store Director. That information, as well as Plaintiff's assertion that Ms. Johnson exhibited retaliatory animus toward Plaintiff due to Plaintiff's previous complaints regarding discriminatory conduct under Johnson's auspices, provides further grounds to compel production of Wolfson's file.

Disciplinary warnings, even if they are merely in the form of handwritten notes are relevant because they may contain information regarding previous complaints of discriminatory conduct. In addition, Plaintiff has been informed that Wolfson was given a warning regarding directing a Saks employee to impersonate in writing a note regarding a customer's request for an return of an item in New York rather in Boca Raton. Surely the nature of an incident like that goes straight to the heart of Wolfson's credibility and truthfulness.

## 2. Alison Bergamini

Bergamini worked as a department manager for Engstrom. Her file is requested because it may have cost costing information relevant to the alleged Reduction in Force, it may contain directives from Engstrom's superiors regarding Engstrom after Engstrom's termination, it may contain information on leave provided to Ms. Bergamini which might indicated Saks' leave policy and it may contain other disciplinary warnings.

17

The file may also be used to impeach the credibility of Barbara Berman, who reported to Bergamini; Ms. Berman has already been deposed by Plaintiff.

### 3. Barbara Berman

Berman's file is relevant because Plaintiff disputes the accuracy of information Berman provided during her deposition on September 11, 2003. Plaintiff has reason to believe that evidence of this inaccuracy is contained within Berman's file. Berman's file is also relevant because it contains information regarding several disciplinary warnings Berman received (and which she admitted to receiving) which could refute Defendants contention that the existence of active warnings preclude an individual from transferring to another position. Finally the existence of these "Requires Improvements" warnings in Berman's file directly contradicts the information given to Plaintiff that by Margaret Phalen that Plaintiff was fired because she had an Requires Improvement in her file.

### 4. Martha Montgomery

Montgomery was Assistant General Manger for Store Operations at Boca during the time Plaintiff was employed there; Montgomery was also a member of the "A" team there. When asked about the security of Engstrom's position during the alleged Reduction in Force, Plaintiff was told by Barbara Wolfson that Montgomery "had more to worry about" than did Engstrom. Thus information reasonably calculated to the discovery of admissible evidence regarding the reasons why Engstrom, not Montgomery was terminated may be contained in Montgomery's personnel file.

### 5. Donna Tallon

18

Tallon was the store manager at Defendants' Bal Harbour store manager when Plaintiff worked there.  Plaintiff believes that complaints Plaintiff made about discriminatory behavior by Tallon were the basis of later retaliation on the part of Saks. Thus Tallon's file is important as it may show the extent to which Saks management was aware of this behavior and how it addressed these complaints.

## 6. Margaret Phalen

Margaret Phalen was Regional Human Resources Director for the Southeast Region of Defendants.  Her file is important because it may contain directives from Suzanne Johnson about handling the termination of Engstrom.  It may also contain information regarding the handling of the case from Jane Rakestraw who is Phalen's manager.

## 7. Catherine Beaver

Plaintiff recalls that due to excessive leaves, Plaintiff was required to assume the responsibilities of Beaver as Department Manager. Plaintiff believes there is information in Beaver's file regarding this which would relate to Plaintiff's ability to work at a lower level. This is relevant because Defendants are claiming that Plainitff would have difficulties in doing so.


WHEREFORE, Plaintiff respectfully requests this honorable court to grant Plaintiff's Motion in its entirety.

DATED: September 22, 2003


Respectfully submitted,

GELFAND & ARPE, P.A.
One Clearlake Centre, Suite 1010
250 S. Australian Avenue
West Palm Beach, FL 33401-5014
Telephone : 561-655-6224
Facsimile:   561-655-1361

MARY ARPE, ESQUIRE


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. Mail this 22  day  of August,2003 to Elizabeth P. Johnson, Attorney at Law, Fowler White Burnett, P.A., Bank of America Tower, 17th Floor, 100 Southeast Second Street, Miami, FL 33131.

By: _____
Mary Arpe
Florida Bar No.: 361925


## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF CIVIL PROCEDURE  37

I hereby certify that I have conferred with counsel for Defendants a good faith effort to resolve the issues raised by the foregoing motion to compel production and that I was unable to do so.

MARY C. ARPE
FLORIDA BAR No 361925

20

Exhibit A

CASE NO. 03-80053-CIV-ZLOCH

## ANSWERS TO INTERROGATORIES

*Identify each and every person who participated in the decision to terminate Plaintiff and state how and to what extent each person participated in the decision.*

## RESPONSE:

Barbara Wolfson
Store Manager
Saks / Boca Raton store
Ms. Wolfson was advised that she needed to eliminate the Assistant Department Manager positions, a Department Manager position, and that the flagship stores would no longer have 3 AGMs.

Suzanne Johnson
Former Regional Store Director
Based upon an overall review of the retail business and as part of an effort to streamline operations and reduce expenses, Ms. Johnson directed the store managers in her region to make significant cuts in the store budgets.

Margaret Phelan
Regional Human Resources Director
Ms. Phelan reviewed all termination decisions in the Southeast region implemented in the Fall of 2001 in connection with the reduction in force.

rise to problems. We do hire relatives, but we are careful so that there is not a conflict of interests, or an appearance of favoritism. If two Associates marry, or otherwise became related while employed, we will work with them, where necessary, to place them in positions that do not give rise to a conflict.

In addition, you are to avoid situations of actual or potential conflict of interest. Personal or romantic involvement with a competitor, supplier or subordinate Associate of the Company, which impairs your ability to exercise good judgment on behalf of the Company, creates an actual or potential conflict of interest. Supervisor-subordinate romantic or personal relationships also can lead to supervisory problems, possible claims of sexual harassment, and morale problems. For that reason, a manager is not permitted to date anyone either up or down in his/her chain of command. Furthermore, Store Senior Executives, Managers, Human Resource professionals, and Loss Prevention Associates are not permitted to date or otherwise be engaged in a sexual or romantic relationship with Associates at their location.

If you are involved in any of the types of relationships or situations described in this policy, you should immediately and fully disclose the relevant circumstances to your immediate supervisor, or any other appropriate supervisor, for a determination as to whether a potential or actual conflict exists. If an actual or potential conflict is determined, the Company may take whatever corrective action appears appropriate according to the circumstances. Failure to disclose facts shall constitute grounds for disciplinary action.

## TERMINATION

If you fail to report to work for three consecutively scheduled workdays without notice, or approval by your supervisor, you will be deemed to have voluntarily terminated your employment with us. All Company owned property (vehicles, keys, uniforms, identification badges, credit cards, etc.) must be returned immediately upon termination of employment.

## RESIGNATIONS

We hope that you will want to make a long and

---

EXHIBIT
B

## CORRECTIVE AND DISCIPLINARY ACTIONS

Violation of Company policies and rules may warrant disciplinary action. We have established a system of progressive discipline that includes verbal warnings, written warnings, final warnings, and suspensions. Likewise, if you receive at below standard performance review you are under a performance warning. Our disciplinary system is not formal and we may, in our sole discretion, utilize whatever form of discipline is deemed appropriate under the circumstances, up to and including termination of employment. Our policy of progressive discipline in no way limits or alters the at-will employment relationship.

## PERFORMANCE WARNING

Performance Warning Reviews are to be used when corrective discussions have not resulted in the required improvement.

Performance Warning Reviews should state specifically the job duties in which the Associate's performance is unsatisfactory, the steps necessary to bring the performance to a satisfactory level, and the time allotted the Associate to meet the objectives set in the review, as well as the action which will result at the end of that time if the Associate's performance has not reached a satisfactory level.

At the end of the warning period, a review of progress will be made by management.

## PERFORMANCE APPRAISAL

A schedule of performance appraisals is set for you for the purpose of evaluating and discussing with you your job performance for the time period under consideration.

The performance appraisal is based on a written evaluation of you, which is prepared by your supervisor.

## EMPLOYMENT OF RELATIVES AND FRATERNIZATION POLICY

The employment of relatives may, in some instances, give

020034